**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **JOSEPH DELBERT POWELL,** | ) **CASE NO. 304-00150** |
| | ) |
| Debtor. | ) **CHAPTER 7** |
| | ) |
| | ) **JUDGE MARIAN F. HARRISON** |
| | ) |
| **LISA POWELL,** | ) **ADV. NO. 304-0408A** |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JOSEPH DELBERT POWELL,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court on the dischargeability complaint filed by the plaintiff

against the debtor seeking to hold certain marital debts nondischargeable pursuant to

11 U.S.C. § 523(a)(5) and (a)(15).[1] A trial was held in this matter, and after considering all

_____

[1]At trial, the plaintiff did not assert her argument that some of the debts were
nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Instead, the plaintiff argued that these

the proof, the Court took the matter under advisement. For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, the Court finds that the relief requested in the complaint should be granted in part and denied in part.

# I. **BACKGROUND**

On March 9, 1999, the parties were divorced by a final decree of divorce, which incorporated a marital dissolution agreement, in the Chancery Court for Williamson County, Tennessee. The relevant sections of the marital dissolution agreement include:

4. **MEDICAL AND DENTAL INSURANCE COVERAGE**. . . . Husband and Wife will share equally in the payment of all medical and dental related costs [of the children] which may not be covered by Husband's plans, same to include, but not by way of exclusion, the cost of medical, hospitalization, dental, orthodontic, ophthalmic and drugs. . . .

6. **EDUCATIONAL TRUST FUND FOR CHILDREN**. In order to establish a trust fund for the full and/or partial payment of the undergraduate educational costs of the children of the parties as is hereinabove referenced in Paragraph 5, on or about January 1, 2002, Husband and Wife will cause to be established an educational trust fund in their joint names as co-Trustees for the use and benefit of the children of the parties. Commencing on January 1, 2002, and continuing on a monthly basis thereafter until the youngest child of the parties attains the age of twenty-three (23) years, Husband will pay into said trust fund the sum of Six Hundred Dollars ($600) per month. . . . The contribution herein represents an equitable adjustment with Wife to restore for the benefit of the children certain assets originally earmarked for the children but otherwise expended during the marriage. . . .

---

particular debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(5) based on judicial estoppel. This argument will be more fully discussed below.

7. **LIFE INSURANCE COVERAGE**. For so long as Husband is required to contribute to the support of the children of the parties as is hereinabove provided in Paragraphs 3-6, he will maintain in full force and effect life insurance coverage on his life in the face amount of Two Hundred Fifty Thousand Dollars ($250,000) with Wife being designated as beneficiary thereon in trust. In the event of Husband's premature death, said life insurance proceeds shall be paid to Wife in trust for the use and benefit of the children of the parties. Wife will maintain said insurance proceeds in a banking institution returning a reasonable rate of interest. She will be permitted to utilize such of the principal and income associated therewith as is necessary to meet the support needs of the children to the same extent as would have been true of Husband had he survived. . . .

12. **WIFE'S VEHICLE**. Wife will individually retain the 1997 Chevrolet Lumina automobile she present[ly] operates, and Husband will execute such documents of transfer as may be necessary to divest his interest in same to Wife. As an equitable adjustment of property herein, Husband will assume sole responsibility for repayment of the outstanding indebtedness encumbering said vehicle owed SunTrust Bank, the monthly payments thereon approximating Three Hundred Thirty-eight Dollars ($338). . . .

16. **CREDIT CARD OBLIGATIONS**. . . . Immediately upon the execution of this Marital Dissolution Agreement, Husband and Wife will join in the procurement of an equity line of credit which will permit the parties to borrow a sufficient sum to satisfy in full the balance owed on the above-referenced credit cards, same approximating $15,000. . . . Husband will assume sole responsibility for the payment of the second mortgage indebtedness herein referenced and will maintain payments thereon in a current status with a provision that the entirety of said indebtedness will be satisfied in full on or before December 31, 2001. . . . The obligation herein on the part of Husband is recognized as an equitable adjustment of property between the parties and is intended to reimburse Wife for sums borrowed by Husband during the marriage on the credit of Wife. . . .

21. **LIFE INSURANCE COVERAGE FOR BENEFIT OF WIFE**. For so long as Husband is obligated to pay any sums to and/or in behalf of Wife under Paragraphs 9 [WIFE'S RESIDENCE], 12 [WIFE'S VEHICLE], 16 [CREDIT CARD OBLIGATIONS], 18 [ALIMONY], and 19 [HEALTH INSURANCE ON WIFE], he will maintain life insurance coverage on his life in the face amount of One Hundred Thousand Dollars ($100,000) with Wife being designated as beneficiary thereon. In the event of Husband's premature

3 - U.S. Bankruptcy Court, M.D. Tenn.

death, the payment of said amount to Wife shall serve as satisfaction in full of all obligations of Husband under the provisions herein referenced. . . .

30. **ENFORCEMENT**. In the event that it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this agreement, said party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting said action, discretion regarding the payment of said amount to remain with the court. . . .

On July 18, 2002, the plaintiff filed a petition for contempt in Chancery Court. The debtor filed an answer to a petition for contempt and a counter-petition for contempt on August 29, 2002. A hearing on the petition for contempt was held on January 8, 2004, which was one day after the debtor filed his bankruptcy petition. Thereafter, on January 16, 2004, the Chancery Court entered a judgment enforcing the provisions of the final decree and marital dissolution agreement. The debtor filed a motion to alter or amend the January 16, 2004, order, and the Chancery Court granted the motion in part and denied it in part.

The Chancery Court's January 16, 2004, order set forth the following items of liability:

a. Joseph Powell is liable for medical and dental costs incurred by his children in the amount of $773.50.

b. Joseph Powell is liable for $2927.63, which represents one-third of premiums paid by Lisa Powell for life insurance coverage on the life of Joseph Powell.

4 - U.S. Bankruptcy Court, M.D. Tenn.

c.  Joseph Powell is liable for $2168.52, which represents the amount Lisa Powell paid for a Chevrolet Lumina when Joseph Powell failed to make the payments, as required under the divorce decree.

d.  Joseph Powell is liable for $11,084.54, which represents payment made by Lisa Powell on an equity line of credit which was the full responsibility of Joseph Powell and was to have been paid on or before December 31, 2001. Joseph Powell is also liable for fourteen months of interest at the rate of 10% for an additional liability of $1293.13.

e.  Joseph Powell is liable for unpaid alimony in the amount of $5000, representing the payment of $200 per month to have commenced January, 2002.  Joseph Powell has failed to pay any alimony and is further liable for interest at the rate of 10% for an additional liability of $500.

f.  Joseph Powell is liable for $15,000 for an educational trust fund that was to be established in January of 2002.

## II.  ARGUMENTS

In her complaint and pre-trial brief, the plaintiff seeks a nondischargeability judgment against the debtor pursuant to 11 U.S.C. § 523(a)(5) and (15) in the total amount of $38,747.32, plus interest, attorney fees, and costs.  As stated earlier, at trial, the plaintiff asserted that the 11 U.S.C. § 523(a)(15) debts should be nondischargeable under 11 U.S.C. § 523(a)(5) pursuant to judicial estoppel.

The debtor concedes that the obligation for alimony, including an arrearage, is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).  As to the other debts listed above, the debtor asserts that they are not in the nature of alimony or child support and that he does not have the ability to pay the debts.

5 - U.S. Bankruptcy Court, M.D. Tenn.

## III.  DISCUSSION

Generally, exceptions to discharge are to be construed strictly against the creditor. *Rembert v. AT&T Universal Card Serv., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).  The burden of proof falls upon the party objecting to discharge to prove by a preponderance of the evidence that a particular debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

## A.  11 U.S.C. § 523(a)(5) - ALIMONY, SUPPORT, MAINTENANCE

First, the plaintiff asserts that the claims for the children's medical and dental costs, for life insurance coverage, and for the children's educational trust are in the nature of support and are therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5).[2]

A debt to a former spouse for alimony, maintenance, or support of the spouse or a child pursuant to a divorce decree is nondischargeable.  11 U.S.C. § 523(a)(5).  Property settlements, on the other hand, are dischargeable in bankruptcy.  *Brody v. Brody (In re Brody)*, 3 F.3d 35,  38 (2d Cir. 1993) (citations omitted).  In other words, an indebtedness that results from a division of marital assets is dischargeable.  *In re Coil*, 680 F.2d 1170, 1171 (7th Cir. 1982).

---

[2]The Court will not discuss the debt for unpaid alimony and interest thereon because the debtor has conceded that this debt is nondischargeable.

Pursuant to 11 U.S.C. § 523(a)(5), three requirements must be met before a marital obligation becomes nondischargeable in bankruptcy: (1) the debt must be in the nature of alimony, maintenance, or support, (2) it must be owed to a former spouse or child, and (3) it must be in connection with a separation agreement, divorce, or property settlement agreement. *Luman v. Luman (In re Luman),* 238 B.R. 697, 704 (Bankr. N.D. Ohio 1999).

Although not specifically referred to as alimony or support by the Chancery Court, the following items are alleged to be support: medical and dental expenses incurred by the children, life insurance premiums, and an educational trust fund for the children's college.

Where the obligation is not specifically designated, as here, the Sixth Circuit has provided an analytical framework for determining whether an obligation "is actually in the nature of alimony, maintenance, or support." *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1106 (6th Cir. 1983). The Sixth Circuit set forth a four-prong test for determining whether an obligation not denominated as alimony or maintenance is nondischargeable: (1) the obligation constitutes support only if the state court or parties intended to create a support obligation; (2) the obligation must have the actual effect of providing necessary support; (3) if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support; and (4) if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. *Id.* at 1109-10. The burden of establishing that an

7 - U.S. Bankruptcy Court, M.D. Tenn.

obligation is in the nature of support is on the objecting non-debtor. *Id.* at 1111.

Later, in *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir. 1993), the Sixth Circuit rejected the "present needs test" when the support obligation was clearly intended. *Id.* at 520. In other words, the *Fitzgerald* inquiry "focuses on the intent of the parties and whether that intent was to create a support obligation and whether such obligation is actually in the nature of alimony, maintenance, or support." *Binder v. Prager (In re Prager)*, 181 B.R. 917, 920 (Bankr. W.D. Tenn. 1995).

## 1. <u>MEDICAL AND DENTAL COSTS</u>

The first obligation in dispute is the debtor's responsibility to share "equally in the payment of all medical and dental related costs [of the children] which may not be covered by Husband's plans, same to include, but not by way of exclusion, the cost of medical, hospitalization, dental, orthodontic, ophthalmic and drugs," as set forth in ¶ 4 of the Marital Dissolution Agreement. Under *Calhoun*, the threshold question is whether the parties or the state court entering the divorce decree intended to create a support obligation. *Calhoun*, 715 F.2d 1103, 1109.

Here, the record establishes that the payment of medical and dental bills of the children was intended to be support by all concerned. These expenses, while not expressly

Case 3:04-ap-00408   Doc 59   Filed 03/20/06   Entered 03/20/06 14:05:22   Desc Main
Document     Page 8 of 22

designated as child support, are expenses related solely to the support of the children. Frankly, the Court is amazed that the debtor has not conceded that this expense is in the nature of child support. *See Rouse v. Rouse (In re Rouse),* 212 B.R. 885, 889 (Bankr. E.D. Tenn. 1997) (medical and dental expenses are in the nature of daily necessities); *In re Seibert,* 914 F.2d 102, 105 ("[a]s a general matter, medical expenses are in the nature of support") (citations omitted). The Court is fully satisfied that the parties intended for the debtor's obligation to contribute toward the medical and dental expenses of his children to be a support obligation rather than a property settlement.

Pursuant to *Calhoun*, the second prong of the analysis is the present needs test. 715 F.2d 1103, 1109. However, as to this item, the present needs prong is immaterial. The amount sought for medical and dental expenses is an arrearage of an obligation which this Court has found to be in the nature of support. Therefore, an analysis of present needs cannot be applied to a past-due obligation. *Fitzgerald*, 9 F.3d 517, 520 ("[w]e have found no case in which a court discharged past-due obligations that were intended as support by the state court or parties"); *Pinkstaff v. Pinkstaff (In re Pinkstaff),* 163 B.R. 504, 508-09 (Bankr. N.D. Ohio 1994) ("searching inquiry set forth in *Calhoun* [is] inapposite to the determination of whether an arrearage on an obligation in the nature of support . . . is nondischargeable"). To hold otherwise would promote the incurring of support arrearages

"with the hope of discharging such obligations once the non-debtor spouse no longer depended upon such support." *In re Rouse*, 212 B.R. 885, 889.

Accordingly, the Court finds that the debt for medical and dental expenses of the children, in the amount of $773.50, is nondischargeable.

## 2.  LIFE INSURANCE PREMIUMS

The marital dissolution agreement included two provisions regarding the debtor's payment of insurance premiums.  The plaintiff asserts that the arrearage for premium payments is nondischargeable.

The first insurance provision of the marital dissolution agreement is found in ¶ 7 and provides as follows:

> For so long as Husband is required to contribute to the support of the children of the parties as is hereinabove provided in Paragraphs 3-6, he will maintain in full force and effect life insurance coverage on his life in the face amount of Two Hundred Fifty Thousand Dollars ($250,000) with Wife being designated as beneficiary thereon in trust.  In the event of Husband's premature death, said life insurance proceeds shall be paid to Wife in trust for the use and benefit of the children of the parties.  Wife will maintain said insurance proceeds in a banking institution returning a reasonable rate of interest.  She will be permitted to utilize such of the principal and income associated therewith as is necessary to meet the support needs of the children to the same extent as would have been true of Husband had he survived. . . .

The second insurance provision of the marital dissolution agreement is found in ¶ 21 and states:

> For so long as Husband is obligated to pay any sums to and/or in behalf of Wife under Paragraphs 9 [WIFE'S RESIDENCE], 12 [WIFE'S VEHICLE], 16 [CREDIT CARD OBLIGATIONS], 18 [ALIMONY], and 19 [HEALTH INSURANCE ON WIFE], he will maintain life insurance coverage on his life in the face amount of One Hundred Thousand Dollars ($100,000) with Wife being designated as beneficiary thereon. In the event of Husband's premature death, the payment of said amount to Wife shall serve as satisfaction in full of all obligations of Husband under the provisions herein referenced. . . .

A life insurance obligation which has the effect of providing support and ensuring a home for the former spouse and/or children in the event of the untimely death of the debtor is nondischargeable under 11 U.S.C. § 523(a)(5) to the extent that it is intended to provide such support. *See Holder v. Holder (In re Holder),* 92 B.R. 294, 297 (M.D. Tenn. 1988) (affirming the bankruptcy court's nondischargeability finding on the grounds that the life insurance was necessary to give the former spouse partial assurance that she would receive the support intended by the final divorce decree in the event of the debtor's death); *Guerron v. Grijalva (In re Grijalva),* 72 B.R. 334, 337 (S.D. W. Va. 1987) (affirming bankruptcy court's determination of nondischargeability of debtor's obligation to maintain life insurance because his former spouse and children were completely dependent upon the debtor for support and the family would be left destitute and dependent on public assistance for survival if anything happened to the debtor); *Mesenbrink v. Eiklenborg (In re Eiklenborg),* 286 B.R. 718, 725 (Bankr. N.D. Iowa 2002) (obligation to maintain life insurance for the benefit of minor children is nondischargeable where premiums have the effect of providing support for

the former spouse and children in the event of the untimely demise of the insured); *Sweck v. Sweck (In re Sweck),* 174 B.R. 532, 536 (Bankr. D.R.I. 1994) (holding that the debtor's obligation to maintain life insurance with his former wife as the beneficiary was a nondischargeable support obligation given the large disparity in the parties' earning capacities and the former wife's need for continuing support because of her age and doubtful employability); *Mohn v. Mohn (In re Mohn),* 118 B.R. 51, 57 (Bankr. E.D. Va. 1990) (finding debtor's obligation to maintain a life insurance policy on his life was intended to be a "safety net" of alimony and pension payments); *cf. Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 298-99 (Bankr. D.R.I. 1996) (declining to find nondischargeable a debtor's obligation to maintain life insurance for his children's benefit until they finished attending college).

As to the first insurance provision of the marital dissolution agreement, the language regarding the purpose is unambiguous: to provide a safety net for his children in case the debtor died during the time in which child support payments are due. The plaintiff is the beneficiary of the insurance policy but only in trust for the children. Moreover, the obligation ends when all child support payments have been completed. Like the children's medical bills, it is clear that the insurance policy protecting the children against the loss of child support payments is in the nature of support. The plaintiff's testimony confirmed that the life insurance was designed to ensure that the children had support and that they could

12 - U.S. Bankruptcy Court, M.D. Tenn.

go to college. Therefore, the arrearage on the premiums for this policy are also in the nature of support and cannot be discharged in bankruptcy.[3]

The same is not true for the second insurance provision of the marital dissolution agreement. This provision is tied both to the payment of property settlement obligations and to the payment of support obligations. To the extent this life insurance policy is directly tied to the payment on the home equity loan, on the plaintiff's vehicle loan, and on credit card obligations, the Court must find that the life insurance provision is merely a division of property. *See Klayman v. Klayman (In re Klayman)*, 234 B.R. 151, 153 (Bankr. M.D. Fla. 1999) (finding that a debtor had a nondischargeable obligation to procure life insurance in the amount of the outstanding balance on the alimony award, but not in the amount owing on the property settlement, where a provision in the settlement agreement required the debtor to maintain life insurance for the benefit of his former spouse until all of his financial obligations to her were satisfied). However, to the extent the insurance policy is designed to ensure a safety net for alimony and health insurance payments, the premium is nondischargeable. Based on the proof, the Court finds that the debtor must maintain a life insurance policy in the amount of $43,800[4] to provide the plaintiff with a safety net of

---

[3]At the hearing, the debtor argued that life insurance premiums could not be in the nature of support because there is no obligation under state law to pay child support after death. However, whether a particular debt is in the nature of support is a question of federal bankruptcy law, not state law. *Binder v. Prager (In re Prager),* 181 B.R. 917, 920.

[4]Monthly alimony = $215 ($50 x 4.3 weeks) x 120 months (10 years) = $25,800. Monthly health insurance premiums on plaintiff = $150 x 120 months (10 years) = $18,000. $25,800 +

support.  Accordingly, the arrearage on the premiums for this life insurance policy is nondischargeable for the pro rated amount.

To recap the Court's findings regarding the life insurance policies, the entire premium on the life insurance policy benefitting the children is nondischargeable (providing insurance coverage in the amount of $250,000), and the premium on the life insurance policy benefitting the plaintiff is nondischargeable to the extent it provides coverage in the amount of $43,800.  According to the Court's calculation, the nondischargeable arrearage on the combined life insurance premium, which includes coverage benefitting the children and the plaintiff, would be $2459.21.[5]

## 3.  COLLEGE TRUST FUND

Next, the plaintiff asserts that the college trust fund for the parties' children is in the nature of support and should not be dischargeable.

The debtor correctly points out that under Tennessee law, there is no statutory duty to support a child after the age of majority and any obligation to provide post-majority support is contractual in nature.  *See Hawkins v. Hawkins,* 797 S.W.2d 897, 898 (Tenn.

---

$18,000 = $43,800.

[5]84% of $2927.63.

App. 1990). However, as noted earlier, federal bankruptcy courts are not bound by the labels that the parties or the state court place on a specific obligation. ***Binder v. Prager (In re Prager),*** 181 B.R. 917, 920. Instead, this Court must look to federal bankruptcy law, and the majority of courts have held that obligations to provide post-majority support, whether in the form of child support payments or educational support, are nondischargeable under 11 U.S.C. § 523(a)(5). ***Id. See also Harrell v. Sharp (In re Harrell)***, 754 F.2d 902, 905 (11th Cir. 1985) (obligation to pay child's college expenses constitutes support); ***Boyle v. Donovan (In re Boyle)***, 724 F.2d 681, 683 (8th Cir. 1984) (same); ***Guerron v. Grijalva (In re Grijalva)***, 72 B.R. 334, 337-38 (college expenses and life insurance obligation constitute support).

A review of the marital dissolution agreement reflects that this provision was intended to provide educational support for the debtor's children. Specifically, the parties agreed to set up a trust for the payment of the children's undergraduate educational costs. The debtor's contributions to the trust were for the purpose of benefitting the children. Moreover, the debtor would get the money back if the children did not go to college. Clearly, the trust was intended to ensure that the children would have the opportunity to go to college, and under federal bankruptcy law, this is in the nature of support. Accordingly, no further analysis is necessary to find that this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

## B. **JUDICIAL ESTOPPEL**

As stated earlier, at trial, the plaintiff asserted that the payment on the Chevrolet automobile ($2168.52) and payment of the equity line of credit ($11,084.54 + $1293.13 in interest = $12,377.67) should be held nondischargeable pursuant to 11 U.S.C. § 523(a)(5) based on the doctrine of judicial estoppel. Specifically, the plaintiff points out that in the state court proceedings (which were held post-petition), the debtor asserted and testified under oath that these items were support in an attempt to have his alimony and child support payments reduced. The plaintiff asserts that the debtor should not now be allowed to argue that the items in question are in fact merely a distribution of property.

Initially, the Court addresses the fact that proceedings were held in state court after the debtor's bankruptcy petition was filed. In the Sixth Circuit, "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). Such equitable circumstances would be "where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Id.* Although no proof was presented on this issue, it appears that both the plaintiff and the debtor proceeded in state court with knowledge of the bankruptcy petition. In the absence of extraordinary circumstances, the state court order should be

voided.   But even if the state court order is not voided, judicial estoppel would still not apply.

The doctrine of judicial estoppel bars a party from asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding **where the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.** *See Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Application of this equitable doctrine is within the Court's discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations omitted).  The purpose of judicial estoppel is to prevent "a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *See Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988).  The Sixth Circuit Court of Appeals has stressed that the doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship ." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218.

In Chancery Court, the debtor asserted, in an attempt to reduce his payments under the marital dissolution agreement, that payment on the plaintiff's vehicle and payment of the insurance premiums were alimony.  Thus, the first requirement of judicial estoppel is met. However, ignoring the fact that the Chancery Court's order was entered post-petition, the

Chancery Court did not rely on the debtor's statements in ruling on the request. In fact, the Chancery Court denied the debtor's request for a reduction in the amounts owing.

Thus, to determine whether these remaining debts are nondischargeable, the Court must look to 11 U.S.C. § 523(a)(15).

### C.  <u>11 U.S.C. § 523(a)(15) - MARITAL DEBT OTHER THAN SUPPORT</u>

Prior to trial, the plaintiff asserted that payment on the Chevrolet automobile ($2168.52) and the equity line of credit ($11,084.54 + $1293.13 in interest = $12,377.67) are nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

Section 523(a)(15) renders nondischargeable marital debts other than alimony, maintenance, and support, that arise in connection with a divorce or separation agreement unless one of the two exceptions applies to the debtor:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (15)    not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit; unless—
> >
> > > (A)    the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance  or  support  of  the  debtor  or  a

dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B)    discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

According to the Bankruptcy Appellate Panel for the Sixth Circuit, 11 U.S.C.

§ 523(a)(15) bifurcates the burden of proof between the objecting creditor and the debtor.

In *Hart v. Molino (In re Molino)*, 225 B.R. 904 (B.A.P. 6th Cir. 1998), the Bankruptcy

Appellate Panel explained:

The objecting creditor bears the burden of proof to establish that the debt is of the type excepted from discharge under § 523(a)(15). Once the creditor has met this burden, the burden shifts to the debtor to prove either of the exceptions to nondischargeability contained in subsections (A) or (B).

*Id.* at 907.  Both the creditor and the debtor must make their respective showings by a

preponderance of the evidence. *Id.*; *In re Smither*, 194 B.R. 102, 106-107 (Bankr. W.D. Ky.

1996).

There is no dispute that these debts arose in connection with the divorce decree.

Accordingly, the burden shifts to the debtor to show that he is nonetheless entitled to

discharge those debts under either subsection (A), the ability to pay section, or (B), the

balancing of hardship section.

19 - U.S. Bankruptcy Court, M.D. Tenn.

In construing subsection (A), ***In re Smither*** held that a debtor has the ability to pay where the debtor's disposable income will pay for all or a material part of the obligations incurred pursuant to a divorce or separation within a reasonable amount of time. 194 B.R. at 110. In other words, 11 U.S.C. § 523(a)(15)(A) permits a debtor to pay obligations incurred in connection with a divorce or separation only from the debtor's disposable income. The court in ***Smither*** noted that the language of 11 U.S.C. § 523(a)(15)(A) paralleled the language of 11 U.S.C. § 1325(b) and accordingly incorporated the "disposable income" test case law of 11 U.S.C. § 1325(b). 194 B.R. at 108 (citations omitted).

"Where . . . a debtor artificially diminishes his ability to repay obligations addressable under § 523(a)(15), such conduct becomes a factor appropriately considered by the bankruptcy court in a § 523(a)(15) proceeding." ***Molino***, 225 B.R. 904, 908.

The debtor has met his burden of showing that he has no disposable income to meet these additional obligations. According to the Court's calculations, the debtor has approximately $2833 in monthly income (2004 taxable income of $34,000 ÷ 12 months) and approximately $1843 in identified monthly expenses (rent $400 + car payment $200 + health insurance $250 + child support $778 + alimony $215). The debtor testified to additional expenses for gas, food, clothing, and car insurance, but he did not specify a monthly amount on these items. If the Court had not already found that additional items were

nondischargeable as support, the Court would find that the debtor had the ability to at least partially pay for his obligations on the equity line of credit and the loan on the plaintiff's car. However, with these additional monthly expenses, the Court finds that the debtor does not have any disposable income and that these two debts are dischargeable pursuant to 11 U.S.C. § 523(a)(15)(A).

## IV.  <u>CONCLUSION</u>

For all of the foregoing reasons, the relief requested in the plaintiff's complaint is granted in part and denied in part.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**